IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EJ LEJEUNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARY SITUATED; HENRY TORRES VILLEGAS, JOSE A. REYES DIAZ, JULIO LOPEZ RIOS, ISRAEL DIAZ, LUIS M. RODRIGUEZ, WILFREDO SANCHEZ, KELVIN CULP, KERRY POOL, DARIN REID, FORREST SMITH, DARREN GULIN, CRAIG WRIGHT, JOSHUA GRIMES, BOBBY PATTON, STEVE EBEL, BRIAN KOPP, RICHARD GIBSON, MIKE SIELICKI, BENNETT ELLIOTT, OSCAR CASTANOJR., DOMINGO DE LA GARZA, DYLAN SUTTON, CHARLES FOSS, KEVIN AHEARN, COURTNEY BEASLEY, ROCKY COCHRAN, ENSLEY WINDHAM, TYLER NEGRI, RICARDO BENAVIDESJR., ZACHARY AKEY, DANIEL PERALES, ALEXANDRE PENNANT, CHARLES ENMANJR., RUBEN TREJO, MICHAEL TUCKER, MAX HIDALGO, ESEQUIEL NAVEJAS, MARIO BELLAMY, NEYSHA DIAZ, <br><br>*Plaintiffs,* <br><br>vs. <br><br>COBRA ACQUISITIONS, LLC, COBRA; ESPADA LOGISTICS AND SECURITY GROUP, LLC, ESPADA CARIBBEAN, LLC, JAMES JORRIE, JENNIFER GAY JORRIE, <br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | SA-19-CV-00286-JKP |

## ORDER

Before the Court in the above-styled cause of action is Defendant Espada Logistics and Security Group, LLC's Partially Opposed Motion to Stay Proceedings in Light of Currently Pending Arbitration [#53] and Plaintiff's Motion for Conditional Certification and for Notice to

1

Putative Class Members [#54]. This case was referred to the undersigned for all non-dispositive pretrial proceedings on October 4, 2019. Accordingly, the undersigned has authority to issue this Order on Defendant's motion pursuant to 28 U.S.C. § 636(b)(1)(A). The Court held a hearing on the pending non-dipositive motions on November 25, 2019. For the reasons set forth below, the motion to stay is **DENIED**. The motion for conditional certification remains pending, and Defendants are ordered to file a response to the motion within 14 days of the District Court's ruling on the pending motion to dismiss.

### I. Background

This case is a putative collective action arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff Ej LeJeune filed this action, on behalf of himself and all others similarly situated, to recover unpaid overtime compensation from Defendants Mammoth Energy Services, Inc. d/b/a Cobra Energy ("Cobra") and Espada Logistics and Security Group, Inc. ("Espada"). (Orig. Compl. [#1].) LeJeune alleges he worked as a paramedic for Defendants in Puerto Rico to provide medical services to individuals who were injured in the wake of Hurricanes Irma and Maria.

LeJeune filed an Amended Complaint adding several additional Defendants—Espada Caribbean LLC, James Jorrie, and Jennifer Gay Jorrie—all of whom LeJeune claims were his employers under the FLSA. (Am. Compl. [#40].) LeJeune contends that he and other similarly situated individuals regularly worked for Defendants in excess of 40 hours each week and were paid a day rate without any overtime compensation, whether classified as employees or independent contractors, in violation of the FLSA and the Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§ 171, *et seq.*

Defendant Cobra is identified in the Amended Complaint as an Oklahoma-based wholly-owned subsidiary of Mammoth Energy Services, Inc. and as a signatory to a series of Master Service Agreements between Cobra and the Government of Puerto Rico related to energy-infrastructure repairs after Hurricane Maria. Cobra allegedly contracted with Defendant Espada, a Texas-based company, to provide the security team necessary for the infrastructure repair service contracts. LeJeune claims that Espada hired him and other proposed class members to perform labor, security, and paramedic services in connection with restoration of power in Puerto Rico under the Master Service Agreements. Espada Caribbean is allegedly the corporate entity created to conduct Espada's work in Puerto Rico; James Jorrie and Jennifer Jorrie are allegedly the CEO and Vice President of Espada, respectively. Espada Caribbean and the Jorries have not yet been served with process and have not made an appearance in this case. Over thirty additional Plaintiffs have filed consents to join this lawsuit since its filing.

There are three motions currently pending in this case, two of which are before the undersigned. After LeJeune filed his Amended Complaint, Espada and Cobra filed a motion to dismiss, arguing that LeJeune failed to sufficiently allege an employment relationship with Espada or Cobra. The motion to dismiss remains pending before the District Court, which retains jurisdiction over all dispositive motions under the governing referral order. Soon after the filing of the Amended Complaint, Espada filed the motion that is the subject of this Order, which asks the Court to stay all proceedings in this action so that the issues raised in this case can be adjudicated by an arbitrator in London pursuant to the arbitration agreement executed between LeJeune and Espada. LeJeune has also filed a motion seeking conditional certification of this case as a collective action.

The undersigned held a hearing on Espada's motion to stay and LeJeune's certification motion on November 25, 2019, at which counsel for Plaintiffs, Espada, and Cobra were present. The undersigned previously stayed Defendants' obligation to file a written response to the certification motion until after the District Court rules on Defendants' motion to dismiss but nonetheless heard argument on the issues raised in both motions. After considering Espada's motion, the responses and replies thereto and the attached exhibits [#59, #61], the arguments of counsel at the hearing, the governing law, and the case file in its entirety, the undersigned will deny the motion to stay and order Defendants to file a response to LeJeune's conditional certification motion within 14 days of the Court's ruling on Defendants' motion to dismiss (if the motion is denied or a more definite statement is ordered).

## II. Analysis

Espada moves for an order staying all proceedings in this case so that an arbitrator in London can adjudicate the overtime claims raised in this suit. Espada contends that LeJeune, a Louisiana resident, and Espada, a Texas-based company, executed two Independent Contractor Service Agreements with respect to LeJeune's work in Puerto Rico on February 12, 2018 and April 23, 2018, both of which contain an identical arbitration agreement providing as follows:

> This Agreement and all disputes, controversies, acts and omissions relating to, arising from or in connection with the entry into this Agreement or its performances shall be governed by and construed in accordance with English Law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act of 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this clause.

(Agreements [#53-2, #53-3] at 11.) The Agreements require that the arbitration "be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced" and be referred to a panel of three arbitrators.

4

(*Id.*) Espada contends that LeJeune was contractually obligated to pursue his wage claims before an arbitrator in London instead of filing this lawsuit. To reserve its rights under the arbitration agreement, Espada initiated arbitration proceedings before LMAA and now asks the Court to stay this case pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, so that the arbitration may proceed in London. (Notice of Arbitration [#53-4] at 1–3.)

Espada's motion relies on the enforceability of the arbitration agreement contained in the Agreements. LeJeune contends the arbitration agreement is unenforceable and therefore the motion to stay should be denied. The Court agrees with LeJeune.

**A.      The parties' arbitration agreement is unenforceable.**

Although the Federal Arbitration Act ("FAA") imposes a strong presumption favoring arbitration, the presumption arises only after the party seeking arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (5th Cir. 2003). An arbitration agreement designating an international forum is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("the Convention"), an international treaty requiring signatory countries to enforce any written agreement providing arbitration as a mechanism to resolve international commercial disputes. 9 U.S.C. § 201; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Corp.*, 473 U.S. 614, 658–59 (1985). The Convention's implementing legislation "authorizes district courts to order parties to proceed with a Convention arbitration even outside the United States." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985). In analyzing whether international arbitration is appropriate under the Convention, the court undertakes a limited inquiry:

> (1) is there an agreement in writing to arbitrate the dispute; in other words, is the arbitration agreement broad or narrow;

(2) does the agreement provide for arbitration in the territory of a Convention signatory;

(3) does the agreement to arbitrate arise out of a commercial legal relationship;

(4) is a party to the agreement not an American citizen?

*Id.* at 1144–1145. The parties agree that the first three factors are satisfied in this case but that the arbitration agreement at issue here is between two American citizens, meaning it is undisputed that the fourth factor is not satisfied.

The lack of a foreign citizen as a party to the arbitration agreement does not necessarily render the Convention inapplicable, however. *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005). In *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339–340 (5th Cir. 2004), the Fifth Circuit "expanded the inquiry under the fourth factor to comport with the language of 9 U.S.C. § 202." *Id.* Section 202 provides that:

> An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed *not* to fall under the Convention *unless* that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (emphasis added). Accordingly, the Convention still applies to an agreement between two American entities, as here, so long as the agreement bears a reasonable relation to a foreign state, independent of the arbitral clause itself. *Freudensprung*, 379 F.3d at 341.

Espada contends that this case is just like *Freudensprung* because the parties are Americans and LeJeune was paid for work in international waters. Espada maintains that the Independent Contractor Agreements executed by LeJeune involve performance abroad because LeJeune was required to engage in travel over international waters because the territorial waters of the continental United States and Puerto Rico are not contiguous. (Reply [#61] at 3.) Espada also argues that the Agreements contemplate stationing workers on internationally registered vessels

6

and Espada did in fact station "a large number of independent contractors in one of two large barges off the coast of Puerto Rico." (Woltman Decl. [#61-1] at ¶ 8.) The facts in *Freudensprung* are readily distinguishable from those of this case and highlight precisely why the arbitration agreements at issue here lack any reasonable relationship to a foreign state and therefore do not fall under the Convention.

*Freudensprung* involved two American companies agreeing to perform pipefitting services abroad on barges located off the shore of West Africa. 379 F.3d at 339–41. Whereas in *Fruedensprung*, the parties entered a contract to perform work in international waters off the coast of a foreign country, here, two American citizens contracted to perform infrastructure work on the island of Puerto Rico, a United States territory. Performance of the contract occurred on the island of Puerto Rico, not offshore. Nor does Espada's evidence establish that any work was performed in *international waters*, only that some workers were housed off the shore of Puerto Rico, likely within the territorial waters of the United States. (Woltman Decl. [#61-1] at ¶ 8.) At the hearing, counsel for LeJeune informed the Court that LeJeune, along with many other workers, was housed in a hotel on the island.

This case is more analogous to *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594 (S.D. Tex. 2005). In *Ensco*, the district court distinguished *Fruedensprung*, noting that the Fifth Circuit holding hinged on the fact that the parties had contracted to perform work in international waters ***off the coast of a foreign country***; that some work took place in international waters, on its own, was insufficient to establish a "reasonable relationship" to a "foreign ***state***." *Id*. at 597–99 (emphasis added). The specific facts of *Ensco* are that two American companies contracted to salvage an oil rig located ninety miles south of the coast of Louisiana in the Gulf of Mexico (in international waters) and to deliver the salvaged materials to Brownsville, Texas. As

here, the arbitration agreement contained a choice-of-law provision designating English law and a London forum for the arbitration. *Id.* at 595. The *Ensco* court reasoned that the only "state" involved in the parties' performance was the United States; there was no performance contemplated in England or any other foreign country. *Id.* at 599. That some work would be performed in international waters did not change the absence of a relationship to a foreign state. *Id.*

Similarly here, there is no "reasonable link between the legal relationship [between Espada and LeJeune] and England or any other foreign state." *See id.* at 601. As in *Ensco*, "[t]he United States is the only country with a vested interest in this dispute." *Id.* The Court rejects Espada's assertion that travel over international waters to reach the place of performance—travel between the mainland United States and a United States territory—gives rise to a connection to a foreign state. Travel between cities in the continental United States, Orlando and San Antonio, for example, likely traverses international waters of the Gulf of Mexico. This fact does not create a relationship with a foreign state, and certainly not with England. *Cf. Freudensprung*, 379 F.3d at 345. Even if traversing international waters to arrive at a jobsite in a United States territory did qualify as performance of contractual duties in international waters, the international waters off the coast of the continental United States and its territories do not create a connection to a foreign state. *See Ensco*, 370 F. Supp. 2d at 599. The Court holds that the arbitration agreement at issue is unenforceable under the Convention. The Court therefore need not address the other arguments raised in the parties' briefing regarding unconscionability of the agreement, due process concerns, and personal jurisdiction.

**B. The Court lacks authority to rewrite the parties' arbitration agreement.**

Espada suggests that the portion of the arbitration agreement selecting English law and designating London and the LMAA as the arbitral forum could be excised in favor of upholding a generic agreement to arbitrate and designating a new forum for the arbitration, such as Texas. The Court disagrees. The only motion before the Court is a motion to stay based on the existence of an arbitration in London pursuant to an arbitration agreement that this Court cannot enforce. There is no pending motion to compel arbitration that would provide the procedural mechanism for compelling arbitration in a new forum. But even if a motion to compel arbitration were pending, it would be denied. Courts do not have the authority to rewrite an international arbitration clause held to be in violation of Section 202. A court may only sever a venue provision from the rest of an arbitration agreement where the parties' intent at the time the agreement was executed demonstrates that the essence of the bargain was to arbitrate, whereas "the situs of the arbitration was merely a minor consideration." *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333 (5th Cir. 1987). Espada has not made such a showing.

Where an international forum is selected as the site of an arbitration and the parties' agreement also provides that foreign law governs the arbitration, the Fifth Circuit has held that the parties intended the forum selection clause and the arbitral agreement "to be entire, not divisible." *Id.* at 334. The same result is compelled here, where London was not only the chosen forum for the arbitration, but the contract also provides that English law is to govern the proceedings. Moreover, even if the international aspects of the arbitration agreement could be severed, as argued by Espada, this Court has no basis to determine that the parties' contract contemplates arbitration in Texas or any other specific forum. *See id.* "Because arbitration is a creature of contract, [this

9

Court] cannot rewrite the agreement of the parties and order the proceeding to be held in [Texas]." *See id.*

C. **There is no other basis for granting a discretionary stay.**

Nor is the Court persuaded by Espada's and Cobra's arguments at the Court's hearing that it should stay this case simply because there is a pending motion to dismiss. Defendants maintain that the pending motion to dismiss "could be dispositive" of this case. This is true in every case with a pending motion to dismiss, but a stay of proceedings under such circumstances is far from automatic. Moreover, Defendants' motion to dismiss moves in the alternative for a more definite statement; even if granted by the District Court, it is likely not to be dispositive of this case. Accordingly, the Court will order Defendants to respond to Plaintiffs' pending motion for conditional certification within 14 days of District Court action on the motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant Espada Logistics and Security Group, LLC's Partially Opposed Motion to Stay Proceedings in Light of Currently Pending Arbitration [#53] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants file a response to the pending Motion for Conditional Certification [#54] **within 14 days** of the District Court's action on Defendants' Motion to Dismiss [#42], if this case survives the motion.

SIGNED this 2nd day of December, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE