# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| EJ LEJEUNE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>COBRA ACQUISITIONS LLC; ESPADA LOGISTICS AND SECURITY GROUP, LLC; ESPADA CARIBBEAN LLC; JAMES JORRIE; and JENNIFER GAY JORRIE | **Case No. 5:19-CV-00286-JKP-ESC** |

## JOINT ADVISORY REGARDING REPRESENTATIVE DISCOVERY ISSUES

Pursuant to the Court's Order (ECF No. 143), the Parties conferred relating the issues raised in Plaintiffs' Motion for Protective Order (ECF No. 142).

**Issue 1:** **The Size of the Representative Scope (Resolved)**

After conferring amongst themselves, the Parties have agreed to a total sample size of 40 individuals, inclusive of the Named Plaintiff and those 8 individuals who provided written declarations in support of Plaintiff's Motion for Conditional Certification. Specifically, Plaintiff is to choose 20 opt-in plaintiffs, Cobra Acquisitions LLC to choose 10 opt-in Plaintiffs, and Espada Defendants to choose the remaining 10 plaintiffs. The Parties agree Cobra will include the 8 declarants in its allotment of opt-in plaintiffs so long as Plaintiffs and the Espada Defendants collectively select at least 9 additional medic personnel as part of the sample, with Espada agreeing to select 3 of the 9. Each of the 40 plaintiffs will be receive and may serve discovery.

**Issue 2:**  **The Amount of Written Discovery to be Served (Court-Intervention Needed)**

Despite conferring amongst themselves, the Parties have been unable to resolve the issue of exactly how many written discovery requests each opt-in Plaintiff will be subject to. The parties' positions are as follows:

**A. Plaintiff's Position**

Plaintiff's position is that the Court should limit written discovery served upon each opt-in Plaintiff to a total of 8 interrogatories written in plain English and 10 document requests for all Defendants. *See* ECF No. 142 at 5. Federal Rule of Civil Procedure 26 states that "the court must limit the frequency or extent of discovery" if it determines that: (1) the discovery south is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (b) the discovery is not proportional to the need of the case, considering . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

Allowing both Cobra and the Espada Defendants the allotment of interrogatories and document requests provided for by the Federal Rules would subject these opt-in plaintiffs to an undue burden and would not be proportional to the needs of the case. For instance, even assuming Cobra and the Espada Defendants each serve the opt-in Plaintiffs with 25 document requests and 13 interrogatories each,[1] this would result in a grand total of 2,000 document requests and 1,040 interrogatories to be answered by the opt-in Plaintiffs collectively.

---

[1] These numbers come from Cobra's first written discovery propounded that are attached as **Exhibit A** to Plaintiff's Motion for a Protective Order. *See* ECF No. 142-1. We are unaware of the exact number of requests/interrogatories the Espada Defendants aim to serve.

2

This discovery is not only burdensome, but nonproportional given Defendants (either Cobra or the Espada Defendants) have unrestricted access to the majority of discovery they purport to seek from Plaintiffs, such as job locations, schedules, compensation rates, dates of employment, chain of supervision, and positions held. *See Valdez v. Superior Energy Svcs, Inc.*, Nos. 2:15-cv-144, 2:15-cv-374, 2017 WL 357824, at *2 (S.D. Tex. Aug. 9, 2017) ("[The employer-defendants] claim[] they 'must obtain the specific information requested in the interrogatories from the Plaintiffs regarding their claimed hours worked and locations worked to understand and evaluate Plaintiffs' damages claims.' Yet Defendants also inform the Court that they have already 'voluntarily produced the payroll and personnel files of all or substantially all of the named Plaintiffs and opt-in Plaintiffs, information which it is reasonable to infer will allow Defendants to assess the viability of Plaintiffs' damages claims."); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013). Moreover, given that no white-collar defenses can apply here because Plaintiffs were paid a day-rate, day-to-day job duties of Plaintiffs (including any supervisory duties, if any) are not as important issues as they could be in an exemption-misclassification case where job duties are key to an overtime exemption. *See Hewitt v. Helix Energy Solutions Group, Inc.*, 983 F.3d 789, 797 (5th Cir. 2020) (salary basis test not met where a plaintiff is paid with a day rate). Moreover, responding to even a set of 25 document requests to a single opt-in plaintiff results in hours spent by Plaintiffs' Counsel preparing a response. *See, e.g.*, *In re U.S. Fin. Sec. Litig.*, 74 F.R.D. 497, 497-98 (S.D. Cal. 1975) (estimating cost of discovery using 10 minutes to answer each Interrogatory). Simply stated, there is no need to waste time and energy for Plaintiffs to prepare and sort through an undue number of identical discovery requests and responses to the remaining class members.

The amount in controversy also weighs in favor a numerical limit. In this regard, Defendants have represented previously that the damages in this case, assuming Plaintiffs are correct (which they deny), are in the low six-figures. While Plaintiffs disagree and believe the amount in controversy is

3

larger, back FLSA wages for the opt-in Plaintiffs appear to be just slightly under seven figures using payroll data produced previously in the case.[2] Allowing written discovery that will have significant transaction costs well into the six-figures for both sides is not an efficient use of resources.

Given the significant concessions by Plaintiffs with respect to the number of Plaintiffs Certainly, Plaintiffs are not arguing that this representative sample should not be subject to any written discovery. However, there should be a numerical limit and we submit 8 interrogatories in plain English and 10 document requests for the Defendants cumulatively is more than sufficient to meet the needs of this case. *See, e.g.*, *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 849, ECF No. 127 (W. D. Tex. Aug. 24, 2018) (limiting written discovery to 8 interrogatories and 10 document requests).

### B. Cobra's Position

Pursuant to the Court's February 22, 2021 Order Setting Hearing [# 143], Cobra Acquisitions LLC ("Cobra"), sets forth its position in this Joint Advisory regarding issues raised in Plaintiffs' Motion for a Protective Order Related to Opt-In Discovery [#142].

#### 1. Background

Cobra was contracted to repair the Puerto Rican electrical infrastructure that was severely damaged by Hurricane Irma and Maria. Espada was contracted by Cobra entities to provide security personnel and paramedics in connection with the work Cobra entities were performing in Puerto Rico. Plaintiffs represent a class of the security personnel and paramedics who contend they were jointly employed by Cobra and Espada, bring claims under the Fair Labor Standards Act (the "FLSA"), and seek to represent a Rule 23 class under the Puerto Rico Wage Payment Statute (the "PRWPS"). Specifically, Plaintiffs allege that they were misclassified as independent contractors under the FLSA and that Defendants failed to comply with the PRWPS by 1) making illegal deductions from wages; 2) not

---

[2] This estimation is of course subject to the continued production of payroll data. Moreover this payroll data was produced prior to the end of the opt-in period.

4

paying for all hours worked in intervals of 15 days; 3) not paying severance required by the PRWPS; 4) failing to pay minimum wage; 5) failing to pay overtime for time worked in excess of 8 hours per day; 6) failing to provide required meal breaks; and 7) failing to pay "Christmas Bonuses". *See* Pl.'s Am. Compl. ¶ 97-111. Cobra contends it did not employ the class members, but rather that they were independent contractors provided by Espada. Cobra and the Espada Defendants are represented by separate counsel and have pled different affirmative defenses.

On July 31, 2020, the Court conditionally certified a collective action of "all individuals engaged by Espada to provide services to Cobra in Puerto Rico between January 21, 2018 and the present who were paid a day-rate." *See* #102 at 2. Plaintiffs' motion for conditional certification was supported by 9 declarations – 1 from Plaintiff and 8 from opt-ins. Following the conditional certification, notice was sent to putative class members. By order of the Court, the notice advised recipients that they "may be required to actively participate in this lawsuit by responding to discovery requests, sitting for a deposition, and/or testifying at a trial that would be held in San Antonio, Texas." *See id.* at 4. The notice period has since closed and 333 consents were filed. Plaintiffs contend that 59 consents were duplicates and the total number of opt-ins is 275.

On December 1, 2020, Cobra served discovery on Plaintiffs consisting of 13 interrogatories and 25 requests for production. On February 4, 2021 Plaintiffs served discovery on Cobra consisting of 12 interrogatories and 39 requests for production. The parties have since agreed to limit discovery to a Representative Class comprised of 40 Opt-in Plaintiffs.

A dispute remains over Plaintiffs' request to ***collectively*** limit Defendants' ability to conduct written discovery to a total of 8 interrogatories and 10 requests for production. It is Cobra's position that the Court should not impose arbitrary limitations on the number of interrogatories and document requests that may be served on the representative sample of 40 opt-in plaintiffs agreed to by the parties.

## 2. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *English v. Tex. Farm Bureau Bus. Corp.*, 462 F. Supp. 3d 667, 669 (W.D. Tex. 2020) (citation omitted).

## 3. The Court Should Permit Full Written Discovery As To The Representative Class

The parties have agreed to reciprocal discovery as to the Representative Class, meaning that defendants and members of the Representative Class may serve discovery on each other. However, Plaintiffs request that Defendants *collectively* not be permitted to serve more than 8 interrogatories and 10 document requests on each such plaintiff and that no such limitation be imposed on Plaintiffs. Plaintiffs request would effectively limit Cobra to 4 interrogatories and 5 document requests per Representative Class member (assuming the requests were divided equally among Cobra and the Espada Defendants). Plaintiffs' request should be denied as it would severally prejudice Cobra by preventing it from conducting the discovery necessary to rebut the testimony contained in the 9 declarations filed in support of conditional certification, move to decertify the FLSA class, oppose the certification of the Rule 23 class, and rebut the FLSA misclassification claims and seven claims brought under the PRWPS involving overtime, meal periods, bonuses, severance and pay deductions.

Plaintiffs bear the burden of showing how full written discovery on a small portion of putative class members—and a small number overall—is "overly broad, unduly burdensome, or oppressive by

6

submitting affidavits or offering evidence revealing the nature of the burden." See *id.* They have made no such showing and therefore are not entitled to a protective order limiting defendants' discovery rights beyond the limitations set forth in the federal and local rules of civil procedure. In any event, it should not be particularly burdensome for any plaintiff to provide the information requested by Cobra in the discovery it propounded, which is highly relevant to the claims and defenses in this lawsuit.

Cobra has served 13 interrogatories and 25 document requests on the Representative Class. *See* Ex. A to Mot. [#142-1]. The 13 interrogatories ask each Representative Class member to identify relevant witnesses (Nos. 1–3, 5–8), their dates of work (No. 4), and other legal actions to which they have been a party (No. 9); provide information about the amounts and types of compensation they received from Espada (Nos. 11–12); and limited information about their operations as contractors (Nos. 12–13). The 25 document requests seek documents along similar lines, namely documents used or identified by the plaintiffs during discovery (Nos. 1–2); witness statements (No. 3); documents concerning relevant communications (Nos. 4–11), their services to a defendant (including the conduct alleged in the complaint and their job duties) (Nos. 12–18, 25), their operations as contractors or employees (Nos. 19–22); and documents exchanged with a defendant (Nos. 23 and 24).

Full written discovery of the claims of 14% of putative class members is consistent with discovery practice in this district and around the country, including cases cited by Plaintiffs in support of their motion for a protective order [#142] (the "Motion"). *See* Mot. at 4; *see also English*, 462 F. Supp. 3d at 673 (W.D. Tex. 2020) (authorizing "full discovery" from 3 named plaintiffs and 21.43% of 140 opt-in plaintiffs); *Nelson v. Am. Standard, Inc.*, Nos. 2:07-cv-10-TJW-CE & 2:08-cv-390-TJW-CE, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (authorizing "full discovery" from 2 named plaintiffs and 91 opt-in plaintiffs); *Halleen v. Belk, Inc.*, No. 4:16-cv-00055, 2017 WL 1495085, at *1–2 (E.D. Tex. Apr. 26, 2017) (authorizing "full discovery" from 14% of 179 opt-in plaintiffs); *Winkler v.*

7

*Sunbelt Rentals, Inc.*, No. 3:12-cv-3789-B, 2014 WL 12596498, at *1–5 (N.D. Tex. July 10, 2014) (authorizing written discovery as to 67% of 164 opt-in plaintiffs); *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, at *3 (N.D. Ill. Sept. 27, 2012) (authorizing written discovery as to 20% of 828 opt-in plaintiffs); *Strauch v. Computer Sciences Corp.*, No. 3:14-cv-956(JBA), 2015 WL 540911, at *3 (D. Conn. Feb. 10, 2015) (authorizing written discovery from 40% of 80 opt-in plaintiffs); *Elliott v. Schlumberger Tech. Corp.*, No. 3:13-cv-79, 2015 WL 13740759, at *5 (D.N.D. June 10, 2015) (same as to 35 of approximately 145 plaintiffs).

Ignoring that "full discovery" of a comparable proportion of opt-in plaintiffs was authorized in *English*, *Nelson*, *Halleen*, and elsewhere, Plaintiffs point the Court to *Alverson v. BL Rest. Ops. LLC*, No. 5:16-cv-00849-OLG, Slip Op. [#127] at 2 (W.D. Tex. Aug. 24, 2018). In *Alverson*, the court permitted the lone defendant to serve 8 interrogatories on 170 opt-in plaintiffs (resulting in 1,360 total interrogatories), a far larger number of plaintiffs than will participate in discovery in this lawsuit. *See id.* Furthermore, *Alverson* contained no disputes over misclassification of workers as independent contractors and no joint employment issues, and did not seek to represent a Rule 23 class, or state law claims alleging unpaid overtime, meal periods, bonuses, severance and improper pay deductions. *See generally id.* The *Alverson* defendant therefore had no need to take discovery of facts relevant to joint employment or independent contractor status or various state law claims. By contrast, discovery of such facts is central to Cobra's defenses to Plaintiffs' claims and to the question of whether this lawsuit should proceed as a collective and class action against Cobra. *See* Cobra' Ans. to Pl.'s Am. Compl. [#91]. Furthermore, because there was only one defendant in *Alverson*, the 8 interrogatories were not split among two groups of Defendants (as Plaintiff proposed by Plaintiff here), and the Court did not need to consider how the defenses of multiple defendants may differ from one another and how those differences may require discovery into different facts. Accordingly, *Alverson* is readily distinguishable and not a useful comparator.

Finally, it should be noted that by order of this Court, the notice sent to putative class members advised them that they "may be required to actively participate in this lawsuit by responding to discovery requests, sitting for a deposition, and/or testifying at a trial that would be held in San Antonio, Texas." *See id.* at 4. Thus, each plaintiff joined this lawsuit aware that he or she may be required to participate in discovery, further supporting their full participation. *See Gandhi v. Dell Inc.*, No. A-08-CA-248-JRN, 2010 WL 11506555, at *7 (W.D. Tex. July 28, 2010) ("This voluntary action should put any potential plaintiffs on notice that, while they are joining a collective action, they are nevertheless becoming plaintiffs in a lawsuit. Responding to reasonable discovery requests is not a burdensome drain on the collective Plaintiffs' resources."); *Daniel v. Quail Int'l, Inc.*, No. 3:07-cv-53 (CDL), 2010 WL 55941, at *1 (M.D. Ga. Jan. 5, 2010) (authorizing discovery from 39 plaintiffs – "Plaintiffs were all on notice that if they chose to opt in to this action they may be required to participate in depositions, provide written responses, and/or testify in Court in support of their claims." (internal quotation marks and citation omitted)); *Hernandez v. Starbucks Coffee Co.*, No. 09-60073, 2011 WL 2729076, at *1 (S.D. Fla. June 22, 2011) (authorizing written discovery authorized from 732 plaintiffs while noting that the "notice included the information that any individual who chose to opt-in to the litigation might have to participate in discovery"); *Renfro v. Spartan Computer Servs., Inc.*, No. 06-2284-KHV-DJW, 2008 WL 474253, at *1–2 (D. Kan. Feb. 19, 2008) ("Each plaintiff filed a consent, which put them on notice that they might be expected to comply with discovery requests. Plaintiffs cannot now rely on conclusory statements that such requests are unduly burdensome to avoid such compliance.").

Accordingly, Cobra requests that the Court deny Plaintiffs' request to limit written discovery served on the Representative Class beyond those imposed by the Federal Rules of Civil Procedure.

### C. Espada Defendants' Position

Plaintiffs' request to limit discovery is both premature and unconvincing. Espada Logistics and Security Group, LLC; Espada Caribbean LLC; James Jorrie; and Jennifer Gay Jorrie (collectively, the "Espada Defendants") have served no discovery requests to date. Plaintiffs have provided no compelling reason to prospectively limit the Espada Defendants' right to propound discovery requests as permitted by the Rules, especially because all four Espada Defendants have already agreed to propound combined discovery requests to the discovery plaintiffs, thereby already reducing the maximum number of requests by a factor of four. The Espada Defendants respectfully request that the Court impose no advance discovery constraints on the theory that what the Espada Defendants eventually choose to serve might be too voluminous. Given the facts and posture of this case, a prospective limitation is not warranted.

First, Plaintiffs correctly note that the Court must limit discovery if "the *discovery sought* is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the *proposed discovery* is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). As the highlighted passages demonstrate, Rule 26(b)(2) applies to discovery requests that have already been served. It does not justify prospectively limiting a party's discovery based on the mere possibility that it may be burdensome, cumulative, or overbroad. This is further evidence that Plaintiffs' request is premature.

The same reasoning applies to Plaintiffs' argument that the number of requests could be overly burdensome and disproportionate to the needs of the case. This contention is based on assumptions about the number of requests Plaintiffs may receive. The Espada Defendants do not intend to overburden the discovery plaintiffs with requests; however, they are entitled to explore Plaintiffs' claims. Also, no party yet knows exactly what the parties' first sets of discovery requests will reveal or

10

whether follow-up discovery will be required. As to purported disproportionality, Plaintiffs argue that "Defendants have unrestricted access to the majority of discovery they purport to seek from Plaintiffs." However, this argument plainly does not apply to the Espada Defendants since they have sought no discovery to date. Nor does the Court need to venture a guess as to what the Espada Defendants may or may not seek. Again, if Plaintiffs believe that the requests the Espada Defendants ultimately serve are unduly burdensome or disproportionate, the Court can evaluate those claims and impose limitations as needed.

Plaintiffs also base their argument on assumptions about what discovery will reveal. For instance, they contend that "no white collar defenses can apply here because Plaintiffs were paid a day rate." This is a legal conclusion that cannot be made until discovery is conducted. *See Hewitt*, 983 F.3d at 794 (noting that "an employer can pay a daily rate under § 541.604(b) and still satisfy the salary basis test of § 541.602" under certain circumstances).[3] They also fail to note that the question whether Plaintiffs were employees or independent contractors will need to be investigated. Plus, in addition to merits-based discovery, the Espada Defendants also will need to investigate differences between Plaintiffs in order to determine whether to move to decertify the class.

Furthermore, neither the amount in controversy nor the effect of discovery on Plaintiffs' counsel favors limiting discovery at this point. For one thing, the FLSA allows for the recovery of attorneys' fees, so it is difficult to see why Plaintiffs' counsel would be prejudiced by fully investigating the merits of Plaintiffs' claims. And the case Plaintiffs cite for the proposition that answering discovery will be unduly burdensome for their counsel is 45 years old and does not account for modern technology, which should allow Plaintiffs' counsel significant advantages over attorneys from generations past. More importantly, though, Plaintiffs have conflated the effect of discovery on the

---

[3] Additionally, the dissenting judge in *Hewitt*, which overturned a different opinion by the same panel, called for an *en banc* rehearing. The parties finished briefing this issue on February 15, 2021, and the Fifth Circuit has not yet determined whether to rehear the case.

11

discovery plaintiffs themselves and the effect on their counsel, and they have provided no basis for considering the latter.

Finally, Plaintiffs cite *Alverson v. BL Restaurant Operations, LLC* in support of their position, but *Alverson* was a very different case. No. 5:16-cv-849-OLG, Order, ECF No. 127 (W.D. Tex. Aug. 24, 2018) First, there were 170 discovery plaintiffs in *Alverson*, more than four times the number the parties have agreed to here. The sheer volume of discovery in *Alverson* supplied a justification for limiting the interrogatories that is lacking in this case. Moreover, *Alverson* involved entirely different facts and FLSA provisions. It was a "tip credit" case about whether the defendant failed to pay violated the FLSA's regulations governing payment of tipped employees. *Alverson*, No. 5:16-cv-849-OLG, 2nd Am. Compl., ECF No. 130 (W.D. Tex. Oct. 1, 2018). This is an unpaid overtime case that also involves an allegation of independent contractor misclassification, so it implicates a completely different, and broader, set of issues. Furthermore, there was only one defendant in *Alverson*. Here, there are five. Limiting the Defendants to eight interrogatories and ten requests for production would limit proportionally limit each of Defendants to less than two interrogatories and two document requests. This is plainly too restrictive. Again, the Espada Defendants have agreed to send a single set of interrogatories and a single set of requests for production to each of the discovery plaintiffs (exclusive of any follow-up requests that may be required later in the case depending on the plaintiffs' answers and any deposition testimony that may be elicited). No other limitation, however, is appropriate.

Dated: February 26, 2021

Respectfully submitted,

By: /s/ *Joseph A. Fitapelli*

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
710-877-8065 – Facsimile
rburch@brucknerburch.com

**Joseph A. Fitapelli**, *admitted pro hac vice*
**Armando A. Ortiz**, *admitted pro hac vice*
**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
212-300-0375 – Telephone
212-481-1333 – Facsimile
jfitapelli@fslawfirm.com
aortiz@fslawfirm.com

**Michael A. Josephson**
State Bar No. 24014780
**Richard M. Schreiber**
State Bar No. 24056278
**Andrew W. Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com
adunlap@mybackwages.com

**ATTORNEYS FOR PLAINTIFFS AND PUTATIVE CLASS MEMBERS**

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system on February 26, 2021.

/s/ *Joseph A. Fitapelli*
**Joseph A. Fitapelli**